```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

ABDUL HAKEEN JAHMAL NASEER
SHABAZZ, aka Owen D. Denson,
Jr.,

      Plaintiff,

v.                              Case No: 2:17-cv-648-FtM-29NPM

JOHNNY MORALES, Correctional
Officer - Colonel and SCOTT
STEWART, Adm. Lieutenant,

      Defendants.
_____

## OPINION AND ORDER

This matter comes before the Court on Defendant Morales' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 88, "Morales Motion") filed February 6, 2019 and Defendant Stewart's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #96, "Stewart Motion") filed May 13, 2019. Plaintiff responded to the Morales Motion on March 4, 2019 (Doc. #90) and to the Stewart Motion on June 26, 2019 (Doc. #99). The Court finds these matters ripe for review.

### I. Background and Factual Allegations

Abdul Hakeeen Jahmal Naseer Shabazz, also known as Owen D. Denson, is a Florida state inmate proceeding *pro se* on his Amended Complaint filed under 42 U.S.C. § 1983 on May 7, 2018 (Doc. #78). By way of background, on November 21, 2017, the Tampa Division transferred this action to this Court after issuing a Temporary

Restraining Order (Doc. #17) which enjoined the then named defendants[1] from requiring Shabazz to shave his beard or impose discipline on Shabazz for violating the DOC grooming policy. By operation of law, the Temporary Restraining Order expired. See March 12, 2018 Order of Court (Doc. #71). The Court sought clarification from Plaintiff whether he was seeking to enjoin the current DOC grooming policy set forth in the Florida Administrative Code which, in pertinent part, provides:

> All inmates shall elect either to be clean shaven or to grow and maintain a half-inch beard. Such a beard shall include all the hair that grows naturally on the face and front of the neck, excluding eyebrows and eyelashes. . .. Those male inmates who desire to remain clean shaven shall be clipper shaved three times per week, and those inmates who desire to grow a half-inch beard shall have their beards trimmed three times per week with a clipper with a half-inch guard.

Fla. Admin. Code, Ch. 33-602.101 Care of Inmates (4)-(5) (effective 7-20-2017). (Id., ¶ 2). On April 2, 2018, Plaintiff advised the Court that he was challenging the current DOC grooming policy under RLUIPA. (Doc. #74). At that time, Plaintiff's original complaint remained pending. (See generally docket). On March 7, 2018, the Court granted Plaintiff's motion requesting leave to file an amended complaint (Doc. #68), and on April 17, 2018, granted Plaintiff an extension of time to file his amended complaint (Doc. #77). As

---

[1] Plaintiff's original complaint named *inter alia* the Secretary, Department of Corrections ("DOC"), the Warden and Assistant Warden, all in their official capacity. See Doc. #1.

noted above, Plaintiff filed his Amended Complaint on May 7, 2018 (Doc. #78) which sues only Desoto Correctional Officers Scott Stewart and Johnny Morales in their individual capacities. (Id. at 2).  On May 10, 2018, the Court finding the Amended Complaint the "operative pleading for this action" denied the various pending motions to dismiss by the original named defendants as moot.  (Doc. #79, ¶¶ 1-2). The Court then directed service of the Amended Complaint on Defendants Morales and Stewart.  (Doc. #81).

The Amended Complaint alleges that Defendants Stewart and Morales violated Shabazz's "First and Fourteenth Amendment rights to the free practice of religion" by forcing him to choose between engaging in conduct that "seriously violates Plaintiff's religious beliefs" or violating the DOC grooming policy that permits inmates to grow a one-half inch beard.  Shabazz contends that the DOC grooming policy violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, et seq. because it prevents him "clipping the mustache and letting the beard flow." (Doc. #78 at 6).  The Court interprets this language to mean that Shabazz asserts that his deeply held religious beliefs require him to grow a beard of an indeterminate length.  The Amended Complaint in passing also alleges a First Amendment retaliation claim against Defendant Stewart for an incident that took place on April 26, 2018 (Id. at 4, 15).  Shabazz seeks declaratory relief,

monetary damages, and temporary and permanent injunctive relief. (Id.). The Court accepts these facts as true for this motion.

Defendant Morales

In the first week of April 2018, Defendant Morales summoned Plaintiff to his office and advised him that the assistant attorney general notified him the temporary restraining order that had been entered had expired. Doc. #78 at 12. Morales told Plaintiff that he needed to comply with the DOC grooming policy and shave his beard to a one-half inch length or he would be placed in confinement. Id. Morales directed his officers to make sure that Plaintiff continued to keep his beard groomed pursuant to the DOC policy. Id. In response to Plaintiff's objection that he had litigation pending, Morales replied "I don't give a damn about your religion, you are going to shave, or you will be placed in confinement. If you want to grow your beard it can be no longer than ½ [inch]." Id.

Defendant Stewart

On an unspecified date in July 2017,[2] Defendant Stewart forced Plaintiff to "be shaved." Id. at 14. Plaintiff advised Defendant Stewart that it was against his religion to shave his beard to the one-half inch set forth by the DOC policy because his religion

---

[2] The Amended Complaint contains only the year (2017) but Plaintiff claims the incident occurred in July 2017 in his reply. Compare Doc. #78 at 14 and Doc. #99 at 2.

"requires me to 'clip' the moustache and let the beard flow." Id. Stewart replied, "he did not give a damn about [Shabazz's] religion that policy calls for [Shabazz] to either shave or grow a ½ [inch] beard." Id. Stewart then ordered Sergeant Gill to escort Plaintiff to the barbershop "to bald his face." Id.

Defendant Stewart states that Plaintiff's allegation that he "bald his face" or "shave" means "trim his beard to one-half inch length." Doc. #96 at 3, n.1. In response, Plaintiff states he was forced "to bald his face or be placed in disciplinary confinement not to a one-half inch beard in July, 2017." Doc. #99 at 2.

Plaintiff filed a grievance about the forced shaving incident involving Stewart and it was finally denied on August 11, 2017. Id. at 15. Plaintiff alleges "there is a reasonable probability that Defendant Stewart took the denial of Plaintiff's grievance as an [sic] carte bla[n]che to continue to violate Plaintiff's" constitutional rights. Id. On April 26, 2018, Defendant Stewart came into Shabazz's living quarters and "flipped Plaintiff's mattress, tipped Plaintiff's holy Quran and other legal documents and left them scattered." Id. Plaintiff admits that "no grievance was filed" for the April 26, 2018 incident "because the issue is already in litigation" in the instant case. Id.

## II. Motion to Dismiss and Standard of Review

Defendants seek dismissal of the Complaint under Fed. R. Civ. P. 12(b)(6) and qualified immunity. See generally Doc. #88 and

#96. In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In general, a complaint must give the defendants fair notice of what the plaintiff's claim is and the grounds on which it rests to satisfy the pleading requirements of Fed. R. Civ. P. 8. *Id*. at 555. In addition, the plaintiff's claim must be plausible on its face to overcome a Rule 12(b)(6) motion to dismiss. Id. at 556. The court must be able to draw a reasonable inference from the complaint that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the facts need not be detailed, they must "raise a reasonable expectation that discovery will reveal evidence" in favor of the plaintiff's claim. Twombly, 550 U.S. at 556. Labels, conclusions, and a formulaic recitation of the elements of a cause of action are not enough to meet the plausibility standard. Id. at 555. Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if the alleged claim is not supported by enough factual allegations to raise a reasonable expectation of relief. Id.

### III. Analysis

A. Amended Complaint is Operative Pleading

The Court granted Plaintiff's motion for leave to file an amended complaint on March 7, 2018 (Doc. #68). The Amended Complaint supersedes Plaintiff's original complaint. Schreane v.

Middlebrooks, 522 F. App'x 845, 847-48 (11th Cir. 2013); see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982("as a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading."). The Court's Local Rules requires "any party permitted to amend a pleading shall file the amended pleading in its entirety with the amendment incorporated therein." M.D. Fla. R. 4.01(a). Plaintiff's *pro se* status does not excuse him from the Court's procedural or local rules. Schreane, 522 F. App'x at 847 (citing McNeil v. U.S., 508 U.S. 106, 113 (1993)). And on May 10, 2018, the Court made clear that the Amended Complaint was "the operative pleading" when it denied as moot the original named defendants' motions to dismiss Plaintiff's original complaint as moot. (See Doc. #79). The Amended Complaint does not refer to or incorporate by reference the original complaint and the Court made clear that the Amended Complaint was the operative pleading for this action. Consequently, the Court considers only the allegations and facts set forth in the Amended Complaint in ruling on Defendants' respective motions.

 B. RLIUPA

 Plaintiff contends DOC's grooming policy violates RLIUPA and he seeks a temporary and permanent injunction. RLIUPA "provide[s] greater protection for religious exercise than is available under

the First Amendment." Holt v. Hobbs, 135 S. Ct. 853, 859 (2015) (quotation marks and citations omitted). In Holt, the Supreme Court held the Arkansas Department of Corrections' grooming policy violated RLIUPA insofar as it prevented the plaintiff from growing a one-half inch beard in accordance with his religious beliefs. Id. at 867. The Court concedes that the RLUIPA requires a "focused inquiry." Id. at 863. Applying the "individualized, context specific inquiry" required by Holt in a RLIUPA claim would require the DOC "to demonstrate that application of the grooming policies to [Shabazz] furthers its compelling interests." Smith v. Owens, 848 F.3d 975, 981 (11th Cir. 2017). However, the issue of whether the DOC grooming policy violates RLIUPA as applied to Shabazz is not presently before the Court. RLUIPA does not authorize individual-capacity suits. Hathcock v. Cohen, 287 F. App'x 793, 798 n.6 (11th Cir. 2008)("[I]ndividual capacity RLUIPA claims are not cognizable."). As a result, Plaintiff cannot proceed on his RLIUPA claim against either Defendant Stewart or Morales because he names both defendants in their individual capacity only. Fatal to Plaintiff's RLIUPA claim is the fact he did not name the Secretary of the Florida Department of Corrections (or any official) in his official capacity in his Amended Complaint. The Court therefore need to not address Plaintiff's RLUIPA claim at this

time.³

   C.   First Amendment—Free Exercise Clause

Defendants assert that they have a right to qualified immunity from suit in their individual capacities in connection with Plaintiff's First Amendment claim. Defendants argue that they were exercising their discretionary duty when they directed Plaintiff to adhere to the DOC grooming policy and because the DOC grooming policy is consistent with Holt, that they did not violate clearly establish law.

Unlike a RLIUPA claim that applies a "least-restrictive means standard," a First Amendment challenge to a prison regulation or policy "alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). The Turner v. Safley⁴ standard of review applies to claim that an inmate's free exercise rights have been violated by a regulation or policy. And, courts are required to give respect and deference to

---

³ To the extent that Plaintiff seeks to challenge the DOC's grooming policy as violating RLIUPA as applied to him and seeks injunctive relief to be exempt from the same, the proper named defendant would be the Secretary of the Florida Department of Corrections in his official capacity. See Ex parte Young, 209 U.S. 123 (1908).

⁴ Turner v. Safley, 482 U.S. 78 (1987).

the judgment of prison administrators in considering a First Amendment challenge. O'Lone, 482 U.S. at 350.

Qualified immunity is "an immunity from suit rather than a mere defense to liability," and it is thus "effectively lost if a case is erroneously permitted to go to trial." Pearson v. Callahan, 555 U.S. 223, 231 (2009)(quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The "driving force" behind the doctrine is the "desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery." Id. (alteration in original). Even conceding that Plaintiff has plausibly stated a First Amendment claim stemming from the DOC grooming policy,[5] qualified immunity applies to bar the claim if, based on the facts presented, "a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the ... officers possessed." Anderson v. Creighton, 483 U.S. 635, 641 (1987). See also Reichle v. Howards, 566 U.S. 658, 664 (2012)("[c]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often ore difficult question whether the purported right exists at all."(internal citations omitted)). "To be clearly established, a right must be sufficiently clear 'that

---

[5] See Robbins v. Robertson, __ F. App'x __, 2019 WL 3302229 *5(11th Cir. July 23, 2019).

every reasonable official would have understood that what he is doing violates that right." Id. (citations omitted).

The Court finds Defendant Morales was acting in his discretionary duty when he ordered Plaintiff to comply with the DOC grooming policy and Defendant Stewart was acting in his discretionary duty when he ordered Plaintiff "to bald his face or be placed in disciplinary confinement." See Roberts v. Spielman, 643 F.3d 899, 903 (11th Cir. 2011) (holding that discretionary authority includes all actions taken by an official pursuant to his duties and within his authority). The Court next turns to whether Defendant Morales and Defendant Stewart believed their alleged actions violated established law.

### 1. Defendant Morales

As set forth above, Plaintiff acknowledges that Defendant Morales informed him that he had received a telephone call from the Assistant State Attorney General who had advised that the temporary restraining order had expired so Plaintiff would have to comply with the DOC grooming policy. Defendant points out that the DOC grooming policy which permits inmates to grow a half-inch beard comports with Holt, which as noted earlier was decided under RLIUPA, an act passed to provide "greater protection" for religious liberty cases than provided by the First Amendment. Holt, 135 S. Ct. 859-60. Thus, the Court finds it was reasonable for Defendant Morales to believe his actions were lawful. Even if Plaintiff eventually successfully

challenges the DOC grooming policy as violating RLIUPA as applied to him, Plaintiff still cannot show that the constitutional right in question was "clearly established" at the time Defendants directed he comply with the DOC grooming policy. For a right to be "clearly established" for qualified immunity purposes, "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011). Defendant Morales applied the standard facially-neutral DOC grooming policy that applies to all inmates to Shabazz only after learning that the temporary restraining order had expired that temporarily exempted him from the policy. No clearly established law suggested that applying the current DOC policy requiring Shabazz to groom his beard to one-half inch would violate his clearly established First Amendment rights. And Plaintiff does not identify any statute or decision of the United States Supreme Court, the Eleventh Circuit or Florida Supreme Court opining that inmates have a constitutional right to grow a beard of an indeterminate length in accordance with his religious beliefs. The Court therefore finds that the facts as alleged in the Amended Complaint fail to show that Defendant Morale's conduct violated Shabazz's constitutional rights or that any alleged constitutional right was then "clearly established." Reichle, 566 U.S. at 664-65. The Court thus finds that Defendant Morales has a right to qualified immunity claim on Plaintiff's First Amendment free exercise claim.

2. Defendant Stewart

Plaintiff alleges that in July 2017 Defendant Stewart ordered Sergeant Gill to escort Plaintiff to the barbershop "to bald his face." Doc. #78 at 14. Plaintiff in his response disputes that he was given the option to comply with the DOC's one-half inch beard policy. Doc. #99 at 2. The Amended Complaint is otherwise devoid of any facts surrounding Defendant Stewart's order to have Plaintiff "bald his face." The Court is required to accept the allegations in the Amended Complaint as true at this stage of the pleading process.

Prior to Holt, the Eleventh Circuit Court of Appeals had repeatedly found that grooming regulations in correctional facilities were reasonably related to legitimate penological interests. Indeed, DOC's previous forced-shaving regulation (i.e. no beard policy) was held by the Eleventh Circuit not to violate the First Amendment or RLIUPA. See Muhammad v. Colon, 494 F. App'x 953, 956 (11th Cir. 2012); see also Shabazz v. Barnauskas, 790 F.2d 1536, 1538 (11th Cir. 1986) (*per curiam*) (holding that "the state's no beard rule serve[s] a legitimate penological interest in preventing escape."). The Court recognizes that the Amended Complaint is devoid of the circumstances surrounding the alleged order directing Shabazz to be bald faced. Nonetheless, Holt held that a no beard policy substantially burdened the plaintiff's exercise of his religion on the facts presented. Holt, 135 S. Ct.

at 863.  Further, current DOC policy permits Plaintiff to grow at a minimum a one-half inch beard.  Thus, the Court cannot at this stage of the pleadings find that Defendant Stewart reasonably believed his order directing Shabazz to be shaved bald was reasonably lawful.  Consequently, the Court will deny Defendant Stewart qualified immunity on Plaintiff's First Amendment Free Exercise claim without prejudice.

    D.   <u>Fourteenth Amendment—Equal Protection Clause</u>

The Amended Complaint makes a passing reference to the Fourteenth Amendment.  <u>See</u> Doc. #78 at 3-4.  The Amended Complaint lacks any factual allegations that support or give rise to a Fourteenth Amendment violation.  The Equal Protection Clause under the Fourteenth Amendment requires that persons similarly situated be treated alike. <u>Plyer v. Doe</u>, 457 U.S. 202, 216 (1982). To state such a claim, a plaintiff must allege and be able to demonstrate that he has been treated differently from others who are similarly situated, and that the unequal treatment stemmed from intentional discrimination.  <u>Muhammad v. Sapp</u>, 388 F. App'x 892, 899 (2010). The Amended Complaint does not allege, yet alone describe, how Shabazz is treated differently than any other inmate who wants to grow a beard of an indeterminate length.   Instead, the Amended Complaint complains that all inmates were required to comply with the DOC grooming policy.  Thus, the Amended Complaint fails to state

claim for relief under the Fourteenth Amendment as to either Defendant.

E.  First Amendment-Retaliation Against Defendant Stewart

The PLRA compels proper exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint.  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.  The Eleventh Circuit further determined that "the question of exhaustion under the PLRA [is] a 'threshold matter' that [federal courts must] address before considering the merits of the case.  Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004). The "failure to exhaust is an affirmative defense under the PLRA," however, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).  However, a complaint may be dismissed for failure to exhaust if the lack of exhaustion appears on the face of the complaint.  Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir.2011). Chandler, 379 F.3d at 1286.  Because exhaustion is mandated by the statute, [this court has] no discretion to waive this requirement. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998)." Myles

v. Miami-Dade Cty. Corr. and Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012).

For these reasons, the Court will "resolve this issue first" as it relates to Plaintiff's retaliation claim against Defendant Stewart. Plaintiff admits on the face of his Amended Complaint that he did not file a grievance concerning the incident that took place on April 26, 2018. Plaintiff appears to suggest he is exempt from filing a grievance because he had already begun the instant litigation. The Prison Litigation Reform Act expressly requires exhaustion "prior to institution a § 1983 a suit." Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Johnson v. Meadow, 418 F.3d 1152, 1156 (11th Cir. 2005). Because Plaintiff admits that he filed "no grievance" over the April 26, 2018 incident, the Court is mandated to dismiss this claim.

Even if the Court considered Plaintiff's retaliation claim, the Court finds it subject to dismissal. Admittedly, the First Amendment forbids prison officials from retaliating against prisoners for the exercise of their free speech rights. Farrow v. West, 320 F.3d 1235, 1248 (2003). To prevail on a retaliation claim, the inmate must be able to establish that "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the [official's] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the

retaliatory action [the disciplinary punishment] and the protected speech [the grievance]." O'Bryant v. Finch, 637 F.3d 1207, 1212 (11th Cir. 2011).

In the alternative, even assuming Defendant Stewart learned that Plaintiff had filed a grievance against him, (not alleged) an eight-month period elapsed between the date when the grievance was finally denied and the date of the alleged incident. The Court finds this lapse in time too remote to be attributable to a retaliatory motive. See Godwin v. Corizon Health, 732 F. App'x 805, 809 (11th Cir. 2018) ("[W]hile close temporal proximity of a protected activity and a subsequent adverse action may be probative of discriminatory intent, a three-month interval between the two is insufficient to establish a causal connection, as a matter of law.") (citing Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363-64 (11th Cir. 2007)). Therefore, the Court finds Plaintiff has failed to articulate a causal connection between Plaintiff's filing of the grievance and Defendant Stewart's alleged adverse action.

Accordingly, it is hereby

**ORDERED:**

1. Defendant Morales' Motion to Dismiss Plaintiff's Amended Complaint (Doc. #88) is **GRANTED and Plaintiff's Amended Complaint is DISMISSED with prejudice against Defendant Morales.** The **Clerk** shall enter judgment in favor of Defendant Morales and correct the caption to reflect the dismissal of Defendant Morales.

2. Defendant Stewart's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #96) is **GRANTED in part and DENIED in part.** Plaintiff's Fourteenth Amendment Equal Protection claim is DISMISSED with prejudice and Plaintiff's First Amendment retaliation claim against Defendant Stewart is DISMISSED without prejudice due to lack of exhaustion. **Plaintiff's First Amendment Free Exercise claim remains pending against Defendant Stewart.**

3. Within **twenty (20) days** from the date of this Opinion and Order, **Defendant Stewart** shall file an answer to Plaintiff's First Amendment Free Exercise claim as contained in his Amended Complaint.

4. The Court makes no ruling on Plaintiff's RLIUPA claim because the claim was not preserved in Plaintiff's Amended Complaint. Plaintiff is permitted to prosecute a RLUIPA claim to obtain the injunctive relief he seeks but he is required to prosecute the claim in a new action. The **Clerk** shall provide Plaintiff with a blank civil rights complaint form with this Opinion and Order for Plaintiff's use, if appropriate.

**DONE and ORDERED** at Fort Myers, Florida, this ___27th___ day of September, 2019.

/s/ John E. Steele
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:
Counsel of Record