UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ABDUL HAKEEN JAHMAL NASEER
SHABAZZ aka Owen D. Denson,
Jr.,

      Plaintiff,

v.                 Case No:  2:17-cv-648-JES-NPM

RICKY DIXON, Secretary,
Florida Department of
Corrections,

      Defendant.

---

**OPINION AND ORDER**

    This matter is before the Court on Plaintiff Abdul Hakeen Jahmal Naseer Shabazz's ("Shabazz") Fifth Amended Complaint ("FAC") (Doc. #178), the operative pleading.  The FAC sets forth a single count alleging that the portion of the current Florida Department of Corrections ("FDOC") grooming policy prohibiting male inmates from growing beards longer than half an inch unlawfully interferes with his statutory right under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc-2000cc-5, to practice his Sunni Muslim religion.  The FAC seeks injunctive and declaratory relief, but no monetary relief.  Specifically, the FAC seeks a declaration that enforcement of this portion of the FDOC grooming policy as applied to Shabazz violates his rights under the RLUIPA, and an injunction (a) barring the

FDOC from enforcing the grooming policy against Shabazz, (b) compelling the FDOC to lift all disciplinary sanctions that have been imposed on Shabazz as a direct consequence of his non-compliance with the grooming policy, and (c) requiring the FDOC to expunge Shabazz's record of any reference to his having engaged in violations of the grooming policy. (Doc. #178, ¶6.)

**I.**

While this case has been pending for approximately six years, only a portion of the procedural history is relevant. Shabazz filed a <u>pro se</u> Complaint (Doc. #1) on September 14, 2017. Eventually, the Court requested counsel for Shabazz from local bar associations (Doc. #125), and an attorney entered his appearance (Doc. #127) and filed a Fourth Amended Complaint (Doc. #138). The Fourth Amended Complaint asserted that Shabazz, as an observant Sunni Muslim, was required to "grow at least a fist-length beard" (Doc. # 138, ¶4). Counsel also filed a Motion for Temporary Restraining Order (Doc. #141), which the Court granted on July 10, 2020. The Temporary Restraining Order ("TRO") (Doc. # 142) enjoined FDOC officials from enforcing the grooming policy against Shabazz to the extent Shabazz was permitted to maintain a fist-length beard of at least four inches and prohibited the FDOC from disciplining Shabazz for violating the grooming policy while the TRO was in effect.

The TRO expired on July 24, 2020, and on that date the Court granted Plaintiff's Motion for a Preliminary Injunction (Doc. #141).  (Docs. ##152, 153.)  The Court enjoined FDOC officials from enforcing the grooming policy against Shabazz to the extent Shabazz was permitted to maintain a fist-length beard of at least four inches and the FDOC was prohibited from disciplining Shabazz for violating the grooming policy while the Preliminary Injunction Order was in effect.  (Doc. #153.)

Through counsel, Shabazz filed his operative Fifth Amended Complaint and Demand for Jury Trial (Doc. #178) ("FAC") on August 11, 2021.  The FAC alleged that Shabazz's faith requires him to "trim his mustache and allow his beard to grow freely" (Doc. #178, ¶10).  The FDOC filed an Answer and Affirmative Defenses (Doc. #179) to the FAC.  The Court denied Dixon's Motion for Summary Judgment. (Docs. ##188, 199.) In due course the parties filed a motion to withdraw jury demand, which the Court granted.  (Doc. #206.)

The Court conducted a two-day bench trial on November 30 and December 1, 2022.  The Court received various exhibits and heard testimony from plaintiff Shabazz, Ronald Angelone, Carl Kirkland, Jr., Lance Neff, and John Clark.  The parties filed post-trial proposed findings and legal memoranda.  (Docs. ##226, 227.)

The Court now makes the findings of facts and conclusions of law set forth below.

## II.

### A.  The Witnesses and Their Credibility

First, some observations concerning the credibility of the witnesses.  Shabazz testified about his Sunni Muslim faith and the requirement that men "clip the mustache and let the beard flow." Shabazz believes it is a sin to cut his beard, except to remove dead hairs.  His faith also dictates that he prepare for prayer five times a day, a process that includes washing his beard. Shabazz has allowed his beard to grow untrimmed since the Court's July 24, 2020 preliminary injunction and is not aware of any problems within the FDOC caused by his beard.  The Court finds Shabazz credible on these topics.

Three witnesses testified for defendant Ricky Dixon, the Secretary of the FDOC.  Ron Angelone ("Angelone") appeared as an expert witness.  Angelone worked in corrections for decades as an officer, warden, and administrator.  As the former director of Virginia's prison system, he addressed the issue of inmate beards by implementing a policy that assigned all inmates who grew beards to administrative segregation.[1]  Angelone did not have experience in prisons or prison systems that allowed inmates in the general population to grow beards, or knowledge or experience relating specifically to Florida prisons.  The Court finds that Angelone

---

[1]  In the FDOC, administrative segregation is roughly comparable to being in "jail" while incarcerated.

is qualified as an expert in prison administration, but not in FDOC polices or in strategies to mitigate risks associated with beards in prisons.  The Court found him to be credible in the sense that he believes the opinions he stated, but the Court is not convinced by many of those opinions.

Dixon's other two witnesses are FDOC employees.  Carl Kirkland, Jr. ("Kirkland") is the Deputy Director of Institutional Operations, and Lance Neff ("Neff") is the General Counsel.  Both testified about the FDOC's rules and policies, finances, and staffing issues, and they both spoke about the reasoning behind the FDOC grooming policy.  The Court found Kirkland and Neff credible on these topics.  Neither claimed to have experience in prisons that allow beards generally or as a religious accommodation.  Therefore, the Court found their testimony about the risks of beards in prison and the strategies to mitigate those risks less credible because the testimony was largely speculative and not supported by the limited experience gained from the approximately three years that Shabazz has had his beard while incarcerated.

Shabazz called John Clark ("Clark") as an expert rebuttal witness.  Clark spent decades working in state and federal corrections as an officer, warden, and administrator, including six years as the Assistant Director of the federal Bureau of Prisons ("BOP").  He worked at the BOP when it removed restrictions

on prisoners' beard and hair length.   Clark testified about the concerns raised by Dixon's witnesses regarding beards in prisons and best practices for addressing those concerns (or in RLUIPA parlance, less restrictive means).   Clark was the only witness with experience in a prison system that allows beards.   The Court finds his testimony on these topics more credible than Dixon's witnesses.   Clark is not, and did not purport to be, an expert on FDOC policies and practices.

**B. Findings of Fact**

The FDOC operates a large prison system currently housing over 80,000 inmates, many of whom have a history of violence. (Doc. #217, pp. 6-7.)   Almost 65% of the FDOC budget is spent on security and institutional operations, and there is a high vacancy rate among correctional officers of various ranks.   (Id. at 7.) As may be expected, the operation of such a system is often challenging.

For approximately the last 45 years, plaintiff Shabazz has been one of the inmates in the custody of the FDOC.   At the time of trial, Shabazz was 73 years old and serving a life sentence for robbery with a deadly weapon.   Shabazz has a lengthy disciplinary history with the FDOC, although most violations occurred more than ten years ago.   According to Defendant's Exhibit 4, Shabazz has

been the subject of 54 disciplinary actions[2], including assaults, nine instances of possession of contraband or stolen goods, and an escape attempt.  Only three of the disciplinary actions occurred within the last decade.

During his imprisonment Shabazz became a Sunni Muslim, and he has been a devout practitioner for a number of years.  The parties agree that a fundamental requirement of Shabazz's faith is that he allow his beard to freely grow.  (Doc. #217, p. 2.)  Shabazz testified that his religion requires him to clip his mustache and let his beard grow freely.  Shabazz has been seeking to grow a beard for decades, and while the FDOC has not questioned the sincerity of his religious beliefs, it has repeatedly denied his requests.  See, e.g., Shabazz v. Barnaukas, 600 F. Supp. 712, 715 (M.D. Fla. 1985), aff'd, 790 F.2d 1536, 1537 (11th Cir. 1986) (Defendants stipulated Shabazz's faith is sincere and growing a beard is deeply rooted in religious beliefs.)  The FDOC continues to agree that Shabazz's "beliefs are sincere that he must have an untrimmed beard" and that the grooming policy "is a substantial burden on the exercise of Plaintiff's belief that he needs an untrimmed beard."  (Doc. #217, p. 9, ¶¶20-21.)

---

[2] The Revised Joint Final Pretrial Statement states there were 59 instances of misconduct.  (Doc. #217, p. 7.)  The difference is immaterial.

Florida Administrative Code Chapter 33-602.101 sets out the FDOC's grooming rules.  While the grooming rules regarding facial hair for male inmates have changed over the years[3], the relevant current provision states, "All inmates shall elect either to be clean shaven or to grow and maintain a half-inch beard."  Fla. Admin. Code Ch. 33-602.101(4).  While this chapter of the Code includes other rules which limit inmates' grooming options, the Court will refer to the above-quoted sentence as the "grooming policy" throughout this Opinion and Order.  Shabazz only challenges the half-inch beard restriction.

There is currently one other prisoner in the FDOC with an exemption from the grooming policy.  Durrell Sims won the right to grow a fist-length beard in Sims v. Inch, 400 F. Supp. 3d 1272 (N.D. Fla. 2019).  The Eleventh Circuit recently upheld that decision in Sims v. Sec'y, Dep't of Corr., --- F.4th ----, 2023 WL 4858535 (11th Cir. 2023).

The TRO of July 10, 2020, and the Preliminary Injunction of July 24, 2020, allowed Shabazz to grow a fist-length beard while this case progressed.  A fist-length beard was the requested relief in the Fourth Amended Complaint, but the FAC modified the requested accommodation to a beard of unrestricted length. Shabazz asserts that the request for a fist-length beard had been

---

[3] At one time the rule prohibited all beards.  It was amended in 2015 to allow a half-inch beard.  (Doc. #188-1, ¶5.)

the result of a miscommunication between himself and his attorney. In any event, the parties have agreed, and the testimony at trial indicated, that the FDOC has allowed Shabazz to grow an untrimmed beard since July 10, 2020.  (Doc. #217, pp. 7-8.)  Shabazz testified he has not trimmed his beard since the preliminary injunction became effective, except to remove dead hairs.  A photograph of Shabazz's beard as it existed at the time of trial, Plaintiff's Exhibit 8, depicts a beard of approximately four inches.  Shabazz testified he expects his beard to grow thicker, but not longer.  The Court suspects it will do both.

Additional facts will be set forth below as necessary to address specific issues.

### C. Disputed Trial Issues

Shabazz seeks to be allowed to grow a beard of unrestricted length and asserts that the grooming policy as applied to him violates his rights under the RLUIPA.  (Doc. #217, pp. 2-3.) Secretary Dixon asserts that Shabazz has failed to exhaust his administrative remedies, and that the FDOC's grooming policy is both in furtherance of its compelling interests of security and safety, hygiene and health, and cost control and program administration, and is the least restrictive means to further such compelling interests.  (Id. at 3.)  Shabazz agrees that the grooming policy is in furtherance of the FDOC's interests and that all three interests are compelling interests.  (Id. at 9, ¶23.)

Further, the parties agree that there are two primary issues in this case: (1) whether Shabazz sufficiently exhausted his administrative remedies, as required by the RLUIPA, and if so, (2) whether FDOC's grooming policy as applied to Shabazz violates his rights under the RLUIPA.  (Id. at 2.)

### III.

**A. The RLUIPA**

In 2000 Congress enacted the RLUIPA which, among other things, prohibits governments from substantially burdening a prisoner's exercise of his or her religion:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  This sets out a burden-shifting framework.  First, plaintiff must show that a government rule, regulation, practice, or policy substantially burdens his exercise of religion.  If this showing is made, defendant has the burden of proving that the challenged directive is the "least restrictive means of furthering a compelling governmental interest."  Ramirez v. Collier, --- U.S. ----, 142 S. Ct. 1264, 1277, 212 L. Ed. 2d 262 (2022); Dorman v. Aronofsky, 36 F.4th 1306, 1313 (11th Cir. 2022).  To satisfy the least-restrictive-means test of the RLUIPA,

the FDOC is required "to prove that petitioner's proposed alternatives would not sufficiently serve its security interests." Smith v. Owens, 13 F.4th 1319, 1326–27 (11th Cir. 2021).

The RLUIPA was passed under Congress's Spending Power, so only those who receive federal funding are liable for violating it. Smith v. Allen, 502 F.3d 1255, 1272 (11th Cir. 2007), overruled in part on other grounds by Hoever v. Marks, 993 F.3d 1353 (11th Cir. 2021) (en banc). Only institutions that receive federal funds—not the individual employees of those institutions—are subject to liability. Id. at 1275. The parties have stipulated that the FDOC receives federal funding and is subject to the obligations imposed by the RLUIPA. (Doc. # 217, p. 6.) The RLUIPA provides that plaintiff, if successful, may obtain "appropriate relief against a government," Smith, 502 F.3d at 1269 (citing 42 U.S.C. § 2000cc-2(a)), which includes both monetary and injunctive relief. Id. at 1271.

Congress intended the RLUIPA's protection of religious liberty to be expansive. It defined "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). Courts must construe the RLUIPA "in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." § 2000cc-3(g). "The RLUIPA provides greater religious protection than the

First Amendment." <u>Dorman v. Aronofsky</u>, 36 F.4th 1306, 1313 (11th Cir. 2022) (citations omitted.)  Additionally, the RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise."  § 2000cc-3(c).

Under the RLUIPA's burden-shifting framework, Shabazz must show that (1) his relevant religious exercise is "grounded in a sincerely held religious belief" and (2) the challenged government policy "substantially burden[s] that exercise" by forcing the plaintiff "to 'engage in conduct that seriously violates [his] religious beliefs.'"  <u>Holt v. Hobbs</u>, 574 U.S. 352, 361 (2015) (quoting <u>Burwell v. Hobby Lobby Stores, Inc.</u>, 573 U.S. 682, 720 (2014)).  The burden then shifts to the government to show that its action or policy is (1) in furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering that interest.  <u>Id.</u> at 362. "The least-restrictive-means standard is exceptionally demanding, and it requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party."  <u>Holt</u>, 574 U.S. at 364 (quoting <u>Hobby Lobby</u>, 573 U.S. at 728) (cleaned up).  While courts should respect the expertise of prison officials "in running prisons and evaluating the likely effects of altering prison

rules," the RLUIPA does not permit "unquestioning deference."  <u>Id.</u> at 365.

The RLUIPA requires the Court to focus its inquiry on Shabazz and his particular circumstances, rather than the general legality of the FDOC's grooming policy.  <u>Id.</u> at 362-63.  To satisfy its burden, the FDOC must "demonstrate that the compelling interest test is satisfied through application of the challenged law" to Shabazz.  <u>See</u> <u>id.</u> at 363 (quoting <u>Hobby Lobby</u>, 573 U.S. at 725). The Court must scrutinize the asserted harm of granting a specific exemption to Shabazz and "look to the marginal interest in enforcing" the FDOC's grooming rule in this particular context. <u>See</u> <u>id.</u>

**B.  Permanent Injunction**

In addition to declaratory relief, Shabazz seeks a permanent injunction against the FDOC.  The standard in the Eleventh Circuit is well-established.

> To obtain a permanent injunction, the moving party must show that (1) it has suffered irreparable harm; (2) remedies at law will not provide adequate compensation for the injury; (3) on balance, an equitable remedy is warranted; and (4) a permanent injunction will not disserve the public interest. <u>Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.</u>, 522 F.3d 1200, 1208 (11th Cir. 2008). The district court can exercise "a range of choice" when deciding whether to grant a permanent injunction, so long as it does not misapply legal standards or rely on clearly erroneous facts. <u>Broadcast Music, Inc. v. Evie's Tavern</u>

Ellenton, Inc., 772 F.3d 1254, 1257 (11th Cir. 2014) (quotation omitted).

W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury, 59 F.4th 1124, 1148–49 (11th Cir. 2023).

### C. Exhaustion of Administrative Remedies

Dixon first argues that Shabazz cannot obtain relief on the merits because he failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") prohibits prisoners from bringing a civil action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). It is undisputed that Shabazz exhausted the FDOC's grievance procedures, but Dixon argues Shabazz was also required to challenge the grooming policy by filing a petition to initiate a rulemaking change under Florida's Administrative Procedure Act. Florida Statutes § 120.54 allows "[a]ny person regulated by an agency or having substantial interest in an agency rule" to "petition an agency to adopt, amend, or repeal a rule."

But Shabazz is not seeking to alter an FDOC rule. The FAC makes clear that Shabazz seeks an exemption from—not a change of—the grooming policy. (See Doc. #178 at 6-7.) Shabazz reiterated this point at trial. Additionally, the Eleventh Circuit has recently rejected this argument in Sims v. Sec'y, Dep't of Corr., --- F.4th ----, 2023 WL 4858535 (11th Cir. 2023). After examining the FDOC's grievance policies, the Eleventh Circuit held that

"prisoners need not file a rulemaking petition to be entitled to proceed with judicial remedies." Sims, 2023 WL 4858535, at *4. The Court finds that Shabazz's exhaustion of the FDOC grievance procedures satisfied the PLRA's pre-suit requirements.

### D. Merits of Shabazz's RLUIPA Claim

Dixon does not dispute that Shabazz's sincerely held religious belief requires him to maintain an untrimmed beard or that the grooming policy substantially burdens Shabazz's exercise of that belief. Rather, Dixon claims enforcement of the grooming policy is the least restrictive means of furthering compelling governmental interests. For his part, Shabazz does not contest that the grooming policy furthers compelling governmental interests. Thus, the critical question in this case is whether applying the grooming policy to prevent Shabazz from maintaining an untrimmed beard is the least restrictive means of furthering the FDOC's compelling government interests.

Much of Dixon's argument broadly defends the grooming policy and anticipates problems that might arise if the FDOC allowed not just Shabazz, but thousands of other Muslim inmates—and perhaps inmates of other faiths—to grow untrimmed beards. But the issue here is more focused — Dixon must prove that denying an exemption to Shabazz is the least restrictive means of furthering the FDOC's compelling interests. See Smith v. Owens, 848 F.3d 975, 980 (11th Cir. 2017).

Dixon identifies three compelling governmental interests served by the grooming policy.  The Court discusses each in turn.

**(1)   Security and Safety**

Dixon asserts that the grooming policy serves security and safety interests because inmates can use untrimmed beards to hide contraband—like handcuff keys, cell phone SIM cards, and razor blades—and can shave a beard after an escape to avoid identification.  Dixon's witnesses also claimed growing a beard is unsafe for the inmate because the beard can be grabbed in a fight and might cause other inmates who are not allowed to grow such a beard to become jealous.

Clark reports that other prison systems have successfully implemented alternative means of serving these safety and security interests while allowing inmates to grow untrimmed beards.  First, BOP officers search beards as part of routine pat-downs by requiring prisoners to run their fingers vigorously through their beards.  For long beards, inmates must also separate the beard and lift it so the officer can see the inmate's neck.  Such a search can be conducted in a few seconds.  Officers can also waive metal detection wands over a beard.  Kirkland testified the FDOC is using both methods to search the beards of Shabazz and Sims, and no witness identified any ongoing problems with such procedures. These search methods can satisfy—and apparently are satisfying—

the FDOC's interest in preventing Shabazz from hiding contraband in his beard.

Like the defendant in Holt, Dixon fails to address an additional point raised by Shabazz. Clark testified that a beard is a "lousy" place to hide contraband—particularly if prison officials search it regularly—because a beard is always exposed. As the Supreme Court recognized in Holt, an inmate's clothing and shoes are much more plausible places to hide contraband, see Holt, 574 U.S. at 367, but the FDOC obviously does not require inmates to go about naked or barefoot. The FDOC has developed policies and practices to address the risk of contraband in clothing and shoes, which suggests they can do the same with Shabazz's beard. Clark testified that routinely searching beards is an effective deterrent against hiding contraband in beards. Dixon presents no convincing reason why such a deterrent would not work on Shabazz.

Clark also provides an alternative means to address FDOC concerns about inmates shaving beards to avoid detection during or after escape attempts. He describes the BOP's practice of taking and retaining photos of inmates at regular intervals and any time there is a significant change to an inmate's appearance. According to Kirkland, the FDOC also has a policy of photographing a prisoner regularly (every five years) and any time his appearance changes significantly. The FDOC is therefore already implementing a less restrictive means to ensure Shabazz can be identified even

if he trims or shaves his beard.  Additionally, the rule allowing all inmates to grow a half-inch beard undermines the FDOC's stated identification concern.  A shorter beard "could also be shaved off at a moment's notice, but the Department apparently does not think that this possibility raises a serious security concern."  Holt, 574 U.S. at 367.

Dixon's remaining safety concerns are simply speculative.  Clark testified that beards do not make prisoners less safe in the BOP, and he opined that a prisoner who won an accommodation through a legal action would more likely engender respect from other inmates than jealousy.  Shabazz testified that no inmate has tried to grab his beard since the preliminary injunction allowed its growth, nor has any inmate expressed jealousy.  Dixon presented no testimony to the contrary, or any evidence of safety-related incidents concerning Shabazz during the approximate three years in which Shabazz has worn an untrimmed beard.

The Court finds that Dixon has not established that limiting Shabazz's beard to half an inch is the least restrictive means of satisfying its compelling security or safety interests.

**(2)  Health and Hygiene**

The grooming policy also serves compelling hygiene and health interests.  Dixon argues FDOC officers would need to be near Shabazz to search his untrimmed beard, which increases the risk of Shabazz catching or spreading COVID-19.

- 18 -

But the beard search techniques described by Kirkland and Clark is less risky than a search of an inmate's mouth, which Kirkland explained is already part of the FDOC's practices:  a prison official looks into an inmate's mouth—perhaps with the aid of a flashlight—and instructs the inmate to move his tongue around and pull his cheeks away from his gums.  A mouth search requires an officer to get closer to an inmate's face than a beard search.

Dixon also argues beards can make it difficult to properly wear a face mask, which may reduce its effectiveness.  But the FDOC no longer requires inmates to wear masks, and Shabazz does not wear one.

As for hygiene, the parties agree that Shabazz has maintained a clean and hygienic beard since 2020, and that the FDOC's hygiene requirements would apply to Shabazz regardless of the outcome of this case.

The Court finds that Dixon has not established that limiting Shabazz's beard to half an inch is the less restrictive means of satisfying its compelling health and hygiene interests.

**(3)  Budgetary Concerns**

FDOC has a compelling interest in conserving its limited resources.  Kirkland testified generally about FDOC's budget and expressed concern that a change to the grooming policy could be costly due to the equipment (like combs and picks) and time needed to search long beards.  But a change to the grooming policy is not

at issue here, and Kirkland did not estimate the cost of granting Shabazz an individual accommodation based on his religion.  Nor did any other witness.

Kirkland testified that currently FDOC chaplains summarily reject all requests for religious accommodations to the grooming policy.  As such, it would be much more costly if chaplains were to consider each request individually to test the sincerity of each prisoner's religious belief.  But Neff testified that sincerity testing can be an effective way to mitigate costs.  For example, when the FDOC started offering Kosher meals, about ten thousand inmates initially requested them.  Neff claimed sincerity testing brought the number down to around four thousand.  In any event, the cost of reviewing other inmates' accommodation requests is not a reason to deny Shabazz an exemption based on his religion.

Neff also expressed concern about a copycat effect.  He expects other inmates to request an exception to the grooming policy if Shabazz wins this case.  But he offered no evidence that Durrell Sims' success in his case or the preliminary injunction in this case led to an increase in accommodation requests.  And the Supreme Court rejected this kind of argument: "At bottom, this argument is but another formulation of the 'classic rejoinder of bureaucrats throughout history: If I make an exception for you, I'll have to make one for everybody, so no exceptions.'"  Holt,

574 U.S. at 368 (quoting Gonzalez v. O Centro Espirita Beneficente Uniado Do Vegetal, 546 U.S. 418, 436 (2006)).

The broad costs concerns raised by Kirkland and Neff are not relevant because Shabazz is not requesting a rule change.  Shabazz has been growing an untrimmed beard for more than three years, and Dixon presented no evidence that the FDOC has incurred any costs as a result.  Nor did any witness estimate the future cost of granting Shabazz the accommodation he requests.  The only cost seems to be the time it takes to search Shabazz's beard.  Kirkland testified that inmates are searched about six times a day, and that a beard adds five to six second to the search.  According to Clark, a beard search takes about two seconds.  But accepting Kirkland's estimate, searching Shabazz's beard takes 30-36 seconds per day.

The Court finds that Dixon has not established that limiting Shabazz's beard to half an inch is the least restrictive means of satisfying its compelling cost interests.  The RLUIPA "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise."  § 2000cc-3(c).

**(4)  Additional Considerations**

The undisputed evidence established that most prison systems in this country allow their inmates to grow beards with less

restrictions in length than the FDOC.  While this does not compel

Dixon to conform to the majority view, the Supreme Court has noted:

> "While not necessarily controlling, the policies
> followed at other well-run institutions would be
> relevant to a determination of the need for a particular
> type of restriction." Procunier v. Martinez, 416 U.S.
> 396, 414, n.14, 94 S. Ct. 1800, 40 L. Ed. 2d 224 (1974).
> That so many other prisons allow inmates to grow beards
> while ensuring prison safety and security suggests that
> the Department could satisfy its security concerns
> through a means less restrictive than denying petitioner
> the exemption he seeks.
>
> We do not suggest that RLUIPA requires a prison to grant
> a particular religious exemption as soon as a few other
> jurisdictions do so.  But when so many prisons offer an
> accommodation, a prison must, at a minimum, offer
> persuasive reasons why it believes that it must take a
> different course, and the Department failed to make that
> showing here.

Holt, 574 U.S. 352, 368-69 (citation to the record omitted).

Finally, Dixon argues a court order in Shabazz's favor would

make the FDOC unable to address any future problems that may arise

from Shabazz's right to grow a beard.  The Holt Court refuted this

concern.  It stated, "if an institution suspects that an inmate

is using religious activity to cloak illicit conduct, 'prison

officials may appropriately question whether a prisoner's

religiosity, asserted as the basis for a requested accommodation,

is authentic.'" Id. at 369 (quoting Cutter v. Wilkinson, 544 U.S.

709, 725 n. 13 (2005)).  And even if a claimant's religious belief

is sincere, as Dixon concedes here, "an institution might be

entitled to withdraw an accommodation if the claimant abuses the

exemption in a manner that undermines the prison's compelling interests." Id.

### (5)   Permanent Injunction

Shabazz seeks a three-part permanent injunction which (a) bars the FDOC from enforcing the grooming policy against Shabazz, (b) compels the FDOC to lift all disciplinary sanctions that have been imposed on Shabazz as a direct consequence of his non-compliance with the grooming policy, and (c) requires the FDOC to expunge Shabazz's record of any reference to his having engaged in violations of the grooming policy. (Doc. #178, ¶6.)   Only the first portion is warranted.

For the reasons set forth above, Shabazz is entitled to a declaratory judgment that he be allowed to grow an untrimmed beard. Shabazz has also satisfied all the elements required for a permanent injunction barring the FDOC from enforcing the grooming policy against Shabazz.   But Shabazz may not use this case to collaterally attack prior disciplinary actions or to seek expungement of disciplinary records.   Federal courts are not appellate venues for prison disciplinary proceedings.   In Florida, the proper remedy for seeking review of a prison disciplinary proceeding is a writ of mandamus from a state court.   Woullard v. Bishop, 734 So. 2d 1151 (1st Dist. Ct. App. Fla. 1999). Furthermore, a successful § 1983 plaintiff is not automatically entitled to expungement of prior prison disciplinary records

relating to his claim.  See Wolff v. McDonnell, 418 U.S. 539, 573-74 (1974) (refusing to apply due process to prison disciplinary proceedings retroactively so as to require expungement of prison records).  While expungement might be appropriate in some cases, Shabazz has not identified any particular disciplinary records that violate his civil rights.

**(6)  Conclusion**

Shabazz has exhausted his administrative remedies because he was not seeking, and was not required to seek, a rule change. Dixon has not shown that applying the grooming policy to Shabazz, and denying his request for an exemption from the grooming policy, is the least restrictive means to further any of the three compelling governmental interests.  Shabazz is entitled to the declaratory judgment set forth below and a part of his requested permanent injunction.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

(1)  The Court **DECLARES** that Shabazz is entitled to the following accommodation under the RLUIPA: the FDOC must allow Shabazz to grow a beard unrestricted in length and may not enforce the two-inch beard rule against Shabazz. This Declaration does not require an alteration to other FDOC rules, nor does it entitle Shabazz to an exemption

from any other part of the FDOC's rules, or from discipline if he uses his beard to violate FDOC rules.

(2)   The request for a permanent injunction is **GRANTED** in part, and the appropriate Permanent Injunction is set forth in a separate document.

(3)   The Clerk shall enter judgment and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __14th__ day of August 2023.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1

Copies:
Counsel of Record